UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                                Chapter 11

Patros, Inc.,                                         Case No. 11-45911

    Debtor.                                  Hon. Phillip J. Shefferly
_____/

## ORDER DENYING MOTION FOR RECONSIDERATION

1. Background of case.

On March 7, 2011, the Debtor filed this Chapter 11 case. On April 1, 2011, the Federal Deposit Insurance Corporation, as Receiver for Citizens State Bank ("FDIC"), filed a motion for relief from the automatic stay under § 362(d)(1) of the Bankruptcy Code (docket entry no. 17). The FDIC's motion alleged that the FDIC is the owner of real property located at 18540 Frazho Road, and 25979 Kelly Road (collectively, "the Property"), and that the Debtor is in possession of the Property. The FDIC's motion further alleged that on February 23, 2009, Citizens State Bank entered into a land contract ("Land Contract") to sell the Property to WT Roseville Property, LLC ("WT Roseville"), and that WT Roseville had defaulted under the Land Contract by failing to make the required monthly installment payments, and by failing to pay the balance of the purchase price of $525,000.00 when the Land Contract matured on March 1, 2010. The FDIC's motion further alleged that on June 4, 2010, the FDIC mailed WT Roseville a notice of forfeiture of the Land Contract in accordance with applicable non-bankruptcy law that required the payment of $507,215.88 on or before June 20, 2010. When WT Roseville did not pay the amount demanded in the notice of forfeiture, the FDIC commenced an action to forfeit the Land Contract in Michigan Judicial District Court 39A, case no. 10-2014 ("State Court Case"). According to the FDIC's motion, on July 20, 2010, WT Roseville consented to the entry in the State Court Case of a judgment

of possession after land contract forfeiture. The judgment contained an express finding by the court that the FDIC "has a right of possession" and provided that if the amount of $507,284.88 was not paid within 90 days from the date of the judgment, then an order of eviction may issue in favor of the FDIC for the Property. When WT Roseville failed to timely pay the amount set forth in the judgment, the FDIC obtained an order of eviction on February 7, 2011. On March 7, 2011, a court officer appeared at the Property to enforce the order of eviction. The court officer was then informed that the Debtor filed this Chapter 11 case and that the Debtor had a lease for the Property.

2. <u>Motion for relief from stay</u>.

The FDIC's motion for relief from the automatic stay asserted that the Debtor has no interest in the Property, because any interest that the Debtor had in the Property derived from the fact that the Debtor claimed to lease the Property from WT Roseville, but WT Roseville's interest in the Property was only that of a vendee under the Land Contract, which was extinguished after the expiration of the redemption period from the State Court Case judgment on October 18, 2010. Therefore, the FDIC asserted that the Debtor has no right to occupy the Property under any lease it may have with WT Roseville, or otherwise.

The Debtor responded to the FDIC's motion by asserting that it is a tenant in the Property pursuant to a lease ("Lease") made on January 1, 2008 between WT Roseville, as the landlord, and the Debtor, as the tenant. The Debtor asserted that no matter what may have happened to WT Roseville's interest in the Property in the State Court Case, and even if its interest in the Property was extinguished by a failure to redeem from the judgment by October 18, 2010, nonetheless, the Debtor still holds a right to the Property as a tenant pursuant to the Lease. Specifically, the Debtor argued that the judgment of possession in the State Court Case did not have the effect of terminating the Lease between WT Roseville and the Debtor, because the Lease was

-2-

11-45911-pjs    Doc 42    Filed 06/03/11    Entered 06/03/11 17:17:46    Page 2 of 11

entered into prior to the time that the Land Contract was made on February 23, 2009. Further, the Debtor argued that the State Court Case also did not extinguish its rights under the Lease because the FDIC did not join the Debtor as a party to that case even though the Debtor, as a lessee of WT Roseville, was a necessary party to that case. Therefore, whatever may have happened in the State Court Case between the FDIC and WT Roseville, and even if WT Roseville's interest in the Property had been extinguished, the Debtor asserted that it still retains the right to stay in the Property pursuant to the Lease that it entered into with WT Roseville.

On April 26, 2011, the FDIC filed a reply (docket entry no. 30) to the Debtor's response to the FDIC's motion. The FDIC's reply emphasized that under applicable Michigan law, a forfeiture of a land contract by a summary proceeding has the effect of terminating any leasehold interest held by a tenant leasing the property from the land contract vendee. But the FDIC's reply also raised a new issue. Specifically, the FDIC argued that regardless of the forfeiture of the Land Contract in the State Court Case, the Lease was in any event already terminated even before the State Court Case by a prior foreclosure sale that took place on the Property on March 7, 2008. The FDIC's reply explained that long before the Land Contract was made, WT Roseville had previously been the owner of the Property. Further, on November 15, 2004, as the Property owner, WT Roseville had granted a mortgage to Citizens State Bank on the Property to secure a loan made by Citizens State Bank to WT Roseville. That mortgage was foreclosed at a sheriff's sale on March 7, 2008, and the redemption period from that sale expired under applicable Michigan law on September 7, 2008. According to the FDIC, the expiration of that redemption period had the effect of extinguishing any interest, right or title that any tenant of WT Roseville may have had under any lease with WT Roseville, including the Debtor's interest under the Lease.

The FDIC's reply acknowledged that on February 23, 2009, Citizens State Bank, which was the owner of the Property at that time, did enter into the Land Contract to sell the Property back to WT Roseville but, according to the FDIC's reply, any leasehold interest that the Debtor held under the Lease was already extinguished by the foreclosure sale on March 7, 2008. Therefore, to summarize, the FDIC argued that the Debtor's interest under the Lease was first extinguished by the expiration of the redemption period from the foreclosure sale on March 7, 2008, but even if it somehow survived that foreclosure sale, it was extinguished once and for all by the Land Contract forfeiture judgment entered on July 20, 2010 in the State Court Case.

On April 28, 2011, because this new argument regarding the March 7, 2008 foreclosure sale was raised for the first time by the FDIC in its reply brief, the Debtor filed an ex parte motion requesting that it also be given an opportunity to file its own brief addressing this issue. The Court granted that request and, on April 28, 2011, the Debtor did file its own brief (docket entry no. 34) addressing this new issue.

### 3. The hearing on the motion for relief.

On April 29, 2011, the Court heard the FDIC's motion for relief from stay and the Debtor's objections to it. After oral argument, the Court noted that § 362(e)(1) of the Bankruptcy Code provides that 30 days after a request for relief from the automatic stay with respect to an act against property of the estate,

> such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing . . . . The court shall order such stay continued in effect pending the conclusion of the final hearing . . . if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing.

-4-

The Court next noted that under § 362(g) of the Bankruptcy Code, the Debtor, as the party opposing relief from the automatic stay under § 362(d)(1), has the burden of proof on all of the issues before the Court.

The Court then turned to the merits of FDIC's motion for relief from stay and considered whether there was cause to lift the automatic stay under § 362(d)(1) of the Bankruptcy Code. The Court identified a number of undisputed facts that emerged either from the papers filed or by agreement of counsel at the hearing: WT Roseville and the Debtor are each owned and controlled entirely by the same individual, Adel Patros; Adel Patros is the individual who signed the Lease, both on behalf of WT Roseville and on behalf of the Debtor; Adel Patros is the individual who signed the Land Contract on behalf of WT Roseville; WT Roseville gave the FDIC a consent judgment in the State Court Case for forfeiture of the Land Contract and possession of the Property; even though the Debtor was not named as a party in the State Court Case, because the Debtor and WT Roseville are owned and controlled by the same individual, the Debtor had actual knowledge of the pendency of the State Court Case; although the Debtor was fully aware of the State Court Case, it did not move to assert any interest in that proceeding; neither WT Roseville nor any other party paid the amount necessary to redeem the Property from the judgment of forfeiture in the State Court Case; although the Debtor was in possession of the Property at all times during the State Court Case and thereafter, the Debtor has never paid any rent, Land Contract payments or any other amounts to the FDIC; and, the very first time after the State Court Case was commenced that the Debtor asserted to the FDIC that it still had a right to possession of the Property under the Lease was on March 7, 2011, when the FDIC came to evict WT Roseville from the Property. The Court noted that these undisputed facts created the appearance in this case that the Debtor or, more precisely, the owner of the Debtor, Adel Patros, is now having second thoughts about turning over possession of

the Property to the FDIC notwithstanding that the Land Contract vendee, WT Roseville, which Adel Patros also owns and controls, had already expressly agreed to the entry of a consent judgment of possession and forfeiture of land contract in the State Court Case.

The Court concluded, based upon these undisputed facts, that the Debtor had failed to show that there was a reasonable likelihood that the Debtor will prevail at a final hearing on the FDIC's motion. In reaching this conclusion, the Court found persuasive the case law in Michigan cited by the FDIC in support of the FDIC's contention that any rights of the Debtor under the Lease were extinguished when the Land Contract vendee, WT Roseville, failed to redeem the Property. See Tilchin v. Boucher, 43 N.W.2d 885, 886 (Mich. 1950) (finding that a lessee under a land contract "was not a necessary party, and his lease interest was also terminated by the summary proceedings" against the land contract vendor).

The Court also considered the Michigan case cited by the Debtor in support of its contention that the Debtor's rights under the Lease were not extinguished by the Land Contract forfeiture, but did not find that case applicable. The Debtor relied on Dolese v. Bellows-Claude Neon Co., 245 N.W. 569 (Mich. 1932), where the owners of the property mortgaged the premises to the plaintiff. At some point, the owners had also entered into a land contract, and the land contract vendee leased the property to the defendants. The plaintiff foreclosed on the mortgage and purchased the property at the sale. The Michigan Supreme Court found that the plaintiff mortgagee, whose mortgage preceded the defendant's lease, prevailed over the defendant whose "lease terminated when the period for redemption expired." Id. at 569-70.

The Debtor reads this holding as somehow creating a first-in-time rule, and tries to apply it to the reverse set of facts, where if a lease precedes a mortgage or a land contract, the lease is not terminated when the mortgage or the land contract is foreclosed. The Dolese court did not create

such a rule, and such a strained reading is not persuasive. Moreover, it is important to note that the Debtor did not cite to any Michigan case law that has ever held that a lease signed by a land contract vendee with a tenant prior to execution of a land contract to purchase the property somehow survived a forfeiture of that land contract. Even if the Debtor had cited such a case, the Court was not persuaded that it was likely that a Michigan court would find for the Debtor on the facts in this case, where the Debtor and the defaulting land contract vendee have such closely aligned interests and are essentially the same entity. The Court also considered the Debtor's argument that its rights under the Lease survived the forfeiture of the Land Contract in this case because the FDIC had not joined the Debtor as a party to the State Court Case.

Ultimately, the Court was not persuaded by any of the Debtor's arguments that the Debtor's rights under the Lease somehow survived the Land Contract forfeiture in this case, or the Debtor's reading of the case law. But more importantly, the Court stated in its ruling that all that it was going to do was determine whether to lift the stay or not lift the stay. The Court then explained that by lifting the stay, the Debtor is not prevented in any way from going back to the State Court Case to assert whatever rights it believes that it has under applicable Michigan law with respect to the Property. If the Debtor believes that its rights under the Lease survived the judgment in the State Court Case, it may still assert those rights in the State Court Case. The Court did not make the ultimate determination of whether the Debtor or the FDIC will prevail in that argument. Instead, the Court determined only whether there is a reasonable likelihood that the Debtor will prevail at a final hearing on the FDIC's motion for relief from stay. The Court concluded that, based upon the arguments advanced by the Debtor and the facts that are not in dispute in this case, the Debtor did not demonstrate a reasonable likelihood of prevailing at a final hearing on the FDIC's motion for relief from stay.

In reaching its conclusion, there were other facts and legal arguments that the Court inquired about at the hearing. For example, the Court inquired of counsel for both the FDIC and the Debtor about the effect of the foreclosure sale on March 7, 2008 upon the Lease, since it was signed in January, 2008. The Court also expressed some skepticism about whether the Lease effectively survived the expiration of the redemption period from that foreclosure sale. But the Court made no ruling one way or the other on that issue. Similarly, the Court expressed concern about whether the Court's acceptance of the Debtor's legal arguments concerning the effect of the forfeiture judgment in the State Court Case might violate the *Rooker-Feldman* doctrine. See Johnson v. Grandy, 512 U.S. 997, 1005-06 (1994) (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)). But the Court did not rely in any way upon either the March 7, 2008 foreclosure sale or the *Rooker-Feldman* doctrine in reaching its determination that the Debtor had failed to show that there was a reasonable likelihood that the Debtor will prevail at a final hearing on the FDIC's motion for relief from stay. Instead, the Court granted the FDIC's motion because the Court was simply not persuaded that the Debtor will prevail at a final hearing based upon the legal arguments advanced by the Debtor in opposition to the FDIC's motion for relief from stay.

4. Motion for reconsideration.

On May 17, 2011, the Debtor filed a motion for reconsideration of the Court's order granting the FDIC's motion for relief from the automatic stay (docket entry no. 40). The Debtor's motion for reconsideration is largely based upon factual and legal arguments that the Debtor advances to support its position that the Debtor's rights under the Lease were not extinguished by the foreclosure sale in March 7, 2008 when Citizens State Bank foreclosed its mortgage on the Property. The Debtor supports its motion for reconsideration by attaching an affidavit signed by Wayne A.

Jannette, a vice president employed by Citizens State Bank from August, 2007 to 2009. The affidavit deals primarily with Jannette's understandings regarding the Lease, both before and after the mortgage foreclosure sale on March 7, 2008, and in the time frame leading up to the execution of the Land Contract on February 23, 2009. The Debtor's motion for reconsideration argues that the Lease was not extinguished by the mortgage foreclosure sale and, therefore, the Court should reconsider its ruling granting the FDIC's motion for relief from the automatic stay.

Motions for reconsideration are governed by L.B.R. 9024-1. The moving party must "not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof." "[A] motion that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted." E.D. Mich. L.B.R. 9024-1(a)(3).

The Debtor's motion does not identify a palpable defect by which the Court and the parties were misled, the correction of which requires a different result in this case. While the Court was somewhat skeptical of the Debtor's arguments regarding whether the Lease survived the mortgage foreclosure sale by Citizens State Bank on March 7, 2008, and the expiration of the redemption period from that sale on September 7, 2008, the Court specifically stated that it did not make any ruling in that regard. Rather, the Court's decision to grant the FDIC's motion for relief from the automatic stay was predicated upon the demonstration of cause by the FDIC for granting relief, and the failure of the Debtor to demonstrate that there was a reasonable likelihood that the Debtor will prevail at a final hearing. The cause found by the Court was that WT Roseville, the Land Contract vendee, owned and controlled by Adel Patros, had granted a consent judgment forfeiting the Land Contract, and expressly granting possession to the FDIC, on July 20, 2010, and that there was no redemption from that judgment within the 90 days provided in it, or, in other words, by October 18,

2010. All of WT Roseville's rights were indisputably extinguished at that time. Although the Debtor argued at the hearing on April 29, 2011 that its rights under the Lease nonetheless survive that judgment of forfeiture, the Court concluded that there was sufficient cause to lift the stay to allow the FDIC to seek to enforce the judgment and the order of eviction in the State Court Case and, by the same token, to allow the Debtor the opportunity to assert whatever arguments it believes it has under applicable Michigan law in the State Court Case.

If the Debtor believes that it has rights under the Lease that are not affected by the judgment in the State Court Case, or that it should have been joined as a party in the State Court Case, and that the failure to join it results in the Debtor's rights somehow surviving the forfeiture proceeding, then those are arguments that the Debtor can and should make in the State Court Case. Frankly, it is curious to this Court that the Debtor chose not to raise any of those arguments in the State Court Case if the Debtor sincerely believes in their merits, but instead chose to file this Chapter 11 case and advance those arguments here for the first time. After all, the Debtor is owned by Adel Patros. Adel Patros owns WT Roseville. WT Roseville is the party that signed and granted the consent judgment in the State Court Case to the FDIC. When Mr. Patros, acting on behalf of WT Roseville, granted the consent judgment to the FDIC, with its express finding that the FDIC "has a right to possession," was he intending to somehow hold back a right for the Debtor to continue to occupy the Property? In any event, by granting the FDIC's motion, the Court found that if the Debtor claims any rights to continue to possess the Property, the proper place to assert those rights is in the State Court Case. If that court determines that the Debtor still has rights in the Property under the Lease, those rights can be administered in the Debtor's Chapter 11 bankruptcy case.

There is nothing in the Debtor's motion for reconsideration that convinces the Court that the granting of relief from the automatic stay is based upon any palpable defect. The Court was and

-10-

11-45911-pjs    Doc 42    Filed 06/03/11    Entered 06/03/11 17:17:46    Page 10 of 11

remains persuaded that there is cause to grant the FDIC relief under § 362(d)(1) of the Bankruptcy Code because of the consent judgment entered in the State Court Case which terminated the interest of WT Roseville, the Debtor's landlord, in the Property. While the Court was also interested in the legal arguments regarding the effect of the March 7, 2008 mortgage foreclosure sale upon the Lease, the Court made no ruling one way or the other regarding its effect on the Lease, and the affidavit and arguments contained in the Debtor's motion for reconsideration simply do not provide a basis for the Court to reconsider its decision to grant the FDIC's motion for relief from the automatic stay. The Court finds that there are no grounds to reconsider its decision granting relief from the automatic stay. If the Debtor believes that it has rights under the Lease to remain in the Property, it is free to pursue those rights in the State Court Case. Accordingly,

**IT IS HEREBY ORDERED** that the Debtor's motion for reconsideration (docket entry no. 40) is denied.

.

**Signed on June 03, 2011**

                                                **/s/ Phillip J. Shefferly**
                                                **Phillip J. Shefferly**
                                                **United States Bankruptcy Judge**